# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARK BORSODY, M.D., Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-1205-BWD |
| | ) | |
| GERALD GIBSON and GUY JEAN SAVOIR, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION GRANTING MOTION TO DISMISS

Date Submitted: April 28, 2025
Date Decided: June 11, 2025

Timothy S. Martin, Daryll Hawthorne-Bernardo, WHITE AND WILLIAMS LLP, Wilmington, DE; OF COUNSEL: Jason J. Blake, CALFEE, HALTER & GRISWOLD LLP, Columbus, OH; *Attorneys for Plaintiff Mark Borsody*.

Michael C. Heyden, Jr., Joseph E. Brenner, GORDON REES SCULLY MANSUKHANI LLP, Wilmington, DE; *Attorneys for Defendants Gerald Gibson and Guy Jean Savoir*.

**DAVID, V.C.**

This memorandum opinion resolves a motion to dismiss claims for breach of fiduciary duty and aiding and abetting against two directors who joined a board after the alleged wrongdoing at the center of this lawsuit took place. The plaintiff, Dr. Mark Borsody ("Plaintiff"), contends that in late 2019, two officers of Nervive, Inc. ("Nervive" or the "Company") undertook a wrongful scheme to remove him from the board, falsify the Company's books and records to remove debts owed to him, and cause the Company to breach additional contractual obligations by refusing to recognize his exercise of stock options. But claims arising from that alleged misconduct are time-barred. To plead around the timeliness problem, Plaintiff asserts a more unusual claim—that the two directors who joined the board after his removal breached their duties by (1) failing to cause the Company to honor its contractual commitments to Plaintiff after learning of his claims, and (2) failing to "investigate" and then "redress" the officers' past misconduct. Plaintiff's first theory arises from obligations that are expressly addressed by contract, foreclosing a breach of fiduciary duty claim. Plaintiff's second theory—that the directors breached their duty of loyalty to act in good faith by intentionally failing to remedy past misconduct—fails to state a claim. Plaintiff's complaint also fails to state an aiding and abetting claim. It is therefore dismissed in its entirety.

1

## I. BACKGROUND

The following facts are taken from Plaintiff's Second Amended Verified Complaint (the "Second Amended Complaint") and the documents it incorporates by reference. Second Am. Verified Compl. [hereinafter Compl.], Dkt. 34.

### A. Plaintiff Founds And Funds Nervive.

Plaintiff is a co-founder of Nervive, a medical device company that is developing "VitalFlow Stimulator," a device that treats stroke victims and patients by mitigating or repairing the impacts of stroke. Compl. ¶¶ 12, 18. Plaintiff served as Chairman of Nervive's board of directors (the "Board") until October 29, 2019. *Id.* ¶¶ 12, 28–29. Defendants Gerald Gibson and Guy Jean Savoir ("Defendants") serve as directors on the Board. *Id.* ¶¶ 14–15.

Since its founding, Nervive has funded its operations through grants and loans, including loans supplied or obtained by Plaintiff. *Id.* ¶ 19. In 2017, the Board granted stock options to Plaintiff in exchange for extinguishing debt that Nervive owed to him as of January 1, 2017. *Id.* ¶ 22. Nervive currently owes Plaintiff 5,789,777 stock options, as well as over $100,000 (plus interest) under secured loans incurred after January 2017 and $800,000 in deferred consulting fees. *Id.* ¶¶ 23, 85.

### B. Plaintiff Is Removed From The Board.

Between August and October 2019, Plaintiff, who was serving as Chairman of the Board, asked to review Nervive's financial information due to suspicions that

2

Nervive's interim Chief Executive Officer, Emilio Sacristan, was not accurately representing Nervive's financial condition to potential investors. *Id.* ¶¶ 24–25.

Sacristan did not answer Plaintiff's information requests. *Id.* ¶ 26. Instead, unbeknownst to Plaintiff, Nervive "illegitimately" granted stock options to another Nervive officer, Stephanie Harrington. *Id.* ¶¶ 27–29. Before the grant, Plaintiff controlled a majority of Nervive's outstanding stock; afterwards, Sacristan and Harrington collectively owned a majority of Nervive stock. *Id.* ¶¶ 28–29. On October 29, 2019, Sacristan and Harrington exercised their majority voting power to remove Plaintiff as a director on the Board. *Id.* ¶ 28.

Sacristan then purported to "erase[]" the more than $900,000 debt that Nervive owed Plaintiff and "fabricated Nervive's capitalization tables to make it appear as though [Plaintiff] was entitled to far fewer options than he was actually owed." *Id.* ¶ 30.

### C. Sacristan And Harrington Appoint Defendants To The Board.

In late October 2019, Sacristan and Harrington appointed Savoir and Gibson to the Board, "promis[ing] them money and stock in Nervive in furtherance of the ploy to impermissibly oust [Plaintiff]." *Id.* ¶¶ 32, 34. Savoir and Gibson declined stock options because they "assumed that they would be sued as a result of their conduct in connection with Nervive to harm [Plaintiff]," but Sacristan told them that they would have the opportunity to obtain stock options "if the litigation resolved in

3

Sacristan's favor." *Id.* ¶ 35. Sacristan also promised Gibson that if he joined the Board, "Nervive would recognize a debt purportedly owed to Gibson that Nervive previously deemed illegitimate years before." *Id.* ¶ 37. Gibson agreed to join the Board only if Plaintiff was no longer a director because Gibson felt "personal animus" toward Plaintiff, stemming from Gibson's service as Nervive's Chief Executive Officer in 2015. *Id.* ¶ 38.

### D. Plaintiff Attempts To Exercise His Stock Options.

On November 14, 2019, Plaintiff attempted to exercise his stock options by sending a signed Stock Option Agreement with a wire transfer of $105,000 to Nervive's counsel. *Id.* ¶¶ 43–44. Nervive refused to recognize the exercise. *Id.* ¶ 45.

Sacristan directed Nervive's counsel to analyze the Company's legal obligations concerning Plaintiff's stock options. *Id.* ¶ 47. Nervive's counsel prepared a memorandum (the "Memorandum"), which was circulated to the Board (including Savoir and Gibson), concluding that Plaintiff had legitimate claims to stock options. *Id.* ¶¶ 48–49.[1]

---

[1] Defendants assert that the "[M]emorandum reflects a defect in the manner of exercise rather than any wrongful denial on the Company's part. While Sacristan indicated that the [M]emorandum concluded that Borsody had a right to exercise shares, it also appears that the Company was prepared to honor this right." DOB at 6–7 (citing Compl., Ex. A at

Nevertheless, in December 2019, Nervive filed a lawsuit against Plaintiff in the United States District Court for the Northern District of Ohio, alleging that Plaintiff "improperly attempted to exercise his stock options." DRB, Ex. 1 ¶ 95. Nervive voluntarily dismissed that lawsuit in July 2020. Compl. ¶ 54.

### E. Plaintiff Informs Savoir And Gibson Of Sacristan's Alleged Misconduct.

On January 20, 2020, Plaintiff spoke to Savoir on the telephone and told him about Sacristan's alleged misconduct, including his improper refusal to allow Plaintiff to exercise his stock options. *Id.* ¶ 60. Savoir later told Gibson about the call. *Id.* ¶ 63.

On January 26, Plaintiff made a written demand to Nervive requesting that Nervive execute the Stock Option Agreement. *Id.* ¶ 62. Plaintiff contends that "[i]t was only after [Savoir and Gibson] failed to act on the information provided to them in the January 20, 2020 [p]hone [c]all that [he] discovered that [Savoir and Gibson] were actively breaching their fiduciary duties and were aiding and abetting Sacristan in the breach of his fiduciary duties." *Id.* ¶ 81.

---

294:1–10 (Sacristan testifying that the "memo was circulated to the board members and we agreed that if he attempted to exercise his stock options, we would honor those stock options and we would grant him whatever [counsel] said he was entitled to at the price [counsel] said would be the price")).

5

On March 12, 2021, Plaintiff and other individuals filed a lawsuit against Nervive, Sacristan, and Harrington in the Summit County Court of Common Pleas in Summit County, Ohio, alleging claims for breach of fiduciary duty, fraud, conspiracy, breach of contract, and unjust enrichment. *Id.* ¶ 47 n.1. Nervive filed counterclaims on April 1, 2022. *Id.* ¶ 76.

On September 23, 2021, Defendants purported to "retroactively ratif[y] and approve[]" Sacristan's actions taken as Nervive's interim Chief Executive Officer, including his refusal to honor Plaintiff's stock options. *Id.* ¶ 82.

### F. Plaintiff Sues Savoir And Gibson, First In Ohio And Then In Delaware.

On January 6, 2023, Plaintiff filed a lawsuit against Savoir and Gibson in the Summit County Court of Common Pleas in Summit County, Ohio. *Id.* ¶ 1. In September 2023, the Court dismissed that action for lack of jurisdiction. *Id.* ¶¶ 2–3.[2]

On December 1, 2023, Plaintiff initiated this action through the filing of a Verified Complaint (the "Initial Complaint"). Dkt. 1. Defendants moved to dismiss the Initial Complaint, and on March 8, 2024, Plaintiff filed a Verified Amended Complaint (the "First Amended Complaint"). Dkts. 9, 13. On March 22, Defendants

---

[2] Defendants concede that because that action "was ultimately dismissed due to a lack of jurisdiction, and this . . . action was filed within one year, it appears that Delaware's Savings Statute, 10 *Del. C.* § 8118, applies to this [a]ction." DOB at 8.

moved to dismiss the First Amended Complaint (the "First Motion to Dismiss"). Dkt. 14. Vice Chancellor Glasscock, to whom this action was assigned, heard oral argument on the First Motion to Dismiss on August 14. Dkt. 23.

On September 24, Plaintiff moved for leave to file a supplemental brief in opposition to the First Motion to Dismiss. Dkt. 24. Vice Chancellor Glasscock denied that motion but informed counsel that he would consider an "application under Rule 15." Dkt. 29. On October 31, Plaintiff moved for leave to amend, which Defendants did not oppose. Dkt. 30.

On November 21, Plaintiff filed the operative Second Amended Complaint. Dkt. 34. In Count I of the Second Amended Complaint, Plaintiff alleges that Savoir and Gibson breached their fiduciary duties in various ways. Paragraph 93 alleges that Savoir and Gibson breached their fiduciary duties by:

a.    disenfranchising [Plaintiff] from Nervive;

b.    failing and/or refusing to allow the exercise of [Plaintiff's] stock options, particularly in light of the legal advice provided to them by Nervive's counsel, namely that [Plaintiff] was entitled to his stock options; and

c.    ratifying Sacristan's actions without having reviewed them, including failing to investigate numerous credible allegations of misconduct related to fraud, breaches of fiduciary duty, and self-dealing against Sacristan and Harrington after being made aware of said misconduct during [Plaintiff] and Savoir's January 20, 2020 [p]hone [c]all.

7

Compl. ¶ 93. Paragraph 94 alleges that Savoir and Gibson breached their fiduciary duties by "ignoring or facilitating the following wrongful conduct":

a. improper changes to Nervive's balance sheet and capitalization table;

b. improper issuance of stock options by Sacristan to Harrington and Harrington's subsequent execution of said options;

c. the repeated refusal to allow [Plaintiff] to exercise his stock options; and

d. Sacristan's and Harrington's improper and illegitimate removal of [Plaintiff] as Nervive's Chairman of the Board when [Plaintiff] began to question Sacristan's self-dealing and fraudulent activities.

*Id.* ¶ 94.

Count II of the Second Amended Complaint alleges that Savoir and Gibson are "liable for aiding and abetting the breaches of fiduciary duties owed to [Plaintiff], and the fraud and conspiracy committed against [Plaintiff], by Harrington and Sacristan." *Id.* ¶ 105.

Defendants moved to dismiss the Second Amended Complaint on December 16, 2024 (the "Motion to Dismiss").[3] Dkt. 36. This action was reassigned to me on

---

[3] On December 16, 2024, Defendants filed their Opening Brief in Support of their Motion to Dismiss the Second Amended Complaint. Dkt. 36 [hereinafter DOB]. Plaintiff filed his Answering Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint on January 16, 2025. Dkt. 39 [hereinafter PAB]. Defendants filed their Reply Brief in Further Support of their Motion to Dismiss the Second Amended Complaint on February 10, 2025. Dkt. 43 [hereinafter DRB].

January 8, 2025. Dkt. 37. The Court heard oral argument on the Motion to Dismiss on April 28. Dkt. 45.

## II.    ANALYSIS

Defendants have moved to dismiss the Second Amended Complaint under Court of Chancery Rules 12(b)(6) and 23.1. When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

### A.    Count I Is Dismissed.

Count I of the Second Amended Complaint alleges a claim for breach of fiduciary duty against Savoir and Gibson. Compl. ¶¶ 90–103. As explained below, Count I is largely time-barred, and Plaintiff's theories designed to avoid his timeliness problem fail to support a cognizable claim for breach of fiduciary duty.

#### 1.    Count I Is Largely Time-Barred.

The Second Amended Complaint alleges that in late 2019, Sacristan and Harrington executed on a scheme in which they improperly issued stock to Harrington, wrongfully removed Plaintiff from the Board, falsified the Company's books and records to remove debts owed to Plaintiff, and caused the Company to

9

further breach its contractual obligations to Plaintiff by refusing to recognize his exercise of stock options. Compl. ¶¶ 28, 30, 43–45. In Count I, Plaintiff alleges that Savoir and Gibson ratified, facilitated, and ignored those breaches. These claims are time-barred.

Courts of equity apply statutes of limitations by analogy to determine whether a claim is time-barred under the equitable doctrine of laches. *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 975 (Del. Ch. 2016). The applicable limitations period for a breach of fiduciary duty claim or a breach of contract claim is three years. *See Largo Legacy Gp., LLC v. Charles*, 2021 WL 2692426, at *9 (Del. Ch. June 30, 2021) ("For cases in equity alleging breach of fiduciary duty, fraud, or breach of contract, like this one, Delaware courts have looked to the analogous three-year statute of limitations period established by 10 *Del. C.* § 8106." (citing *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *15–16 (Del. Ch. Dec. 1, 2009))).

Plaintiff's claims accrued between October 2019 (when he was removed from the Board) through December 2019 (when the Company rejected Plaintiff's attempt to exercise his stock options). Compl. ¶¶ 28, 43–45, 54; *see Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1178 (Del. Ch. 2022) ("When a plaintiff contends that fiduciaries have breached their duties by making a specific decision that was complete when made, that decision constitutes a discrete wrongful act that

10

causes the claim to accrue."); *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *6 (Del. Ch. July 11, 2011) ("The three-year period typically begins to run when the contract is breached, whether or not the plaintiff was aware of such breach."). Because Plaintiff waited until January 2023—more than three years after his claims accrued—to file suit, his claims are untimely.

Plaintiff responds that the analogous statute of limitations was tolled because he "had no way of knowing [Savoir and Gibson] were involved in the plot to oust him from the Board and prevent him from exercising his options" until after he spoke with Savoir in January 2020. PAB at 8–9.[4] The Second Amended Complaint fails to plead facts supporting the conclusory assertion that Savoir and Gibson participated in any "plot to oust" Plaintiff—instead, the Second Amended Complaint alleges that Savoir and Gibson joined the Board *after* Harrington received Nervive stock, Plaintiff was removed from the Board, and the Company's books allegedly were altered to remove Plaintiff's debts.

Moreover, "[e]quitable tolling is designed 'to ensure that fiduciaries cannot use their own success at concealing their misconduct as a method of immunizing themselves from accountability for their wrongdoing.'" *Buddenhagen v. Clifford*,

---

[4] *See also* Tr. of 4-28-2025 Oral Args. on Defs.' Mot. to Dismiss the Second Am. Compl. [hereinafter Tr.] at 18:8–12, Dkt. 46 (arguing that "it wasn't until sometime after that point, weeks later, maybe even months, that [Plaintiff] realized . . . [Defendants] were not on his team").

11

2024 WL 2106606, at \*24 (Del. Ch. May 10, 2024) (quoting *In re Am. Int'l Gp., Inc.*, 965 A.2d 763, 813 (Del. Ch. 2009)). "But '[i]nquiry notice universally limits tolling.'" *Id.* (alteration in original) (quoting *Ontario Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, 294 A.3d 65, 96 (Del. Ch. 2023)). "Put another way, to invoke the equitable tolling doctrine, 'the facts underlying a claim [must be] so hidden that a reasonable plaintiff *could not* timely discover them.'" *Id.* (quoting *Jacam Chem. Co. 2013, LLC v. Jacam Chem. Co. Inc.*, 2024 WL 960180, at \*8 (Del. Ch. Mar. 1, 2024) (alteration in original) (emphasis added)).

Plaintiff's claims were not hidden. By the time Nervive refused to honor his stock options in December 2019, Plaintiff was on notice of his claims, even if he did not know at that time what role, if any, Savoir and Gibson played in the decision. *See Jepsco, Ltd. v. B.F. Rich Co.*, 2013 WL 593664, at \*8 (Del. Ch. Feb. 14, 2013) ("The plaintiff's actual awareness of underlying facts giving rise to the cause of action is not required."). Plaintiff's tolling argument therefore fails.

To plead around this timeliness problem, Plaintiff attempts to recharacterize his otherwise time-barred claims to focus on Savoir and Gibson's subsequent, continuing failure to remedy past misconduct. Plaintiff argues that Savoir and Gibson breached their fiduciary duties after January 2020 by (1) continuing to fail to cause the Company to honor its contractual commitments to Plaintiff after learning of his claims, and (2) failing to "investigate" and "redress" Sacristan and

12

Harrington's prior misconduct. As explained below, neither theory supports a viable claim for breach of fiduciary duty.

> **2. Plaintiff's Theory That Defendants Failed To Cause The Company To Honor Its Contractual Commitments Arises From Obligations Addressed By Contract And Must Be Adjudicated Within That Framework.**

Paragraphs 93(a) and (b) and 94(a) and (c) of the Second Amended Complaint present variations on the same tune—Savoir and Gibson breached their fiduciary duties by failing to cause the Company to honor its contractual obligations to Plaintiff once they learned about his claims.[5] Even assuming this formulation avoids the timeliness problem (which is doubtful), it fails because the claim is governed exclusively by contract.

"It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) (affirming Court of Chancery's holding that a claim "seek[ing] to enforce obligations that are

---

[5] *See* Compl. ¶ 93(a) (alleging Savoir and Gibson "disenfranchis[ed] [Plaintiff] from Nervive," presumably by failing to honor his stock options); *id.* ¶ 93(b) (alleging Savoir and Gibson "refus[ed] to allow the exercise of [Plaintiff's] stock options"); *id.* ¶ 94(a) (alleging Savoir and Gibson breached their duties by "ignoring or facilitating" "improper changes" to Nervive's balance sheet and capitalization table to remove Plaintiff's stock options); *id.* ¶ 94(c) (alleging Savoir and Gibson breached their duties by "ignoring or facilitating" Sacristan and Harrington's "repeated refusal to allow [Plaintiff] to exercise his stock options").

13

expressly addressed by contract . . . must be adjudicated within the analytical framework of a breach of contract claim"). "In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations [are] foreclosed as superfluous." *Id.* (first citing *Blue Chip Cap. Fund II Ltd. P'rship v. Tubergen*, 906 A.2d 827, 833 (Del. Ch. 2006); and then citing *Gale v. Bershad*, 1998 WL 118022, at *5 (Del. Ch. Mar. 4, 1998)). "The reasoning behind this is that '[t]o allow a fiduciary duty claim to coexist in parallel with [a contractual] claim, would undermine the primacy of contract law over fiduciary law in matters involving . . . contractual rights and obligations.'" *Grayson v. Imagination Station, Inc.*, 2010 WL 3221951, at *7 (Del. Ch. Aug. 16, 2010) (alteration in original) (quoting *Gale*, 1998 WL 118022, at *5). Intuitively, the rule also makes sense because a plaintiff cannot circumvent corporate separateness through a fiduciary duty claim that seeks to hold a director or officer personally liable on a contract to which he or she is not a party. As a result, an overlapping breach of fiduciary duty claim is appropriate only where it depends on additional facts, is broader in scope, and involves a different remedy. *Schuss v. Penfield P'rs, L.P.*, 2008 WL 2433842, at *10 (Del. Ch. June 13, 2008).

Whether Savoir and Gibson should have caused the Company to honor Plaintiff's stock options and repay his debt is "a matter of contract interpretation," not fiduciary obligation. *Nemec v. Shrader*, 2009 WL 1204346, at *4 (Del. Ch. Apr. 30, 2009), *aff'd*, 991 A.2d 1120 (Del. 2010). Plaintiff's fiduciary duty claim does

14

not rely on additional facts; it rests solely on Nervive's refusal to recognize Plaintiff's contract rights.[6] Nor does it implicate a different remedy, which, for either claim, would entail recognizing the value of Plaintiff's options and unpaid debt.

Because Plaintiff's claim must be "adjudicated within the analytical framework of a breach of contract claim," if at all, it is dismissed. *Nemec*, 991 A.2d at 1129.

### 3. Plaintiff's Theory That Defendants Failed To Investigate And Redress Prior Misconduct Fails To State A Claim.

Plaintiff also contends that Savoir and Gibson breached their fiduciary duties by failing to "investigate" and "redress" "credible allegations of misconduct related to fraud, breaches of fiduciary duty, and self-dealing against Sacristan and Harrington," including their "manipulation of Nervive's financials" and "Sacristan's illegitimate grant of Harrington's shares." Compl. ¶¶ 93(c), 56; *see also id.* ¶¶ 94(a)– (d) (alleging that Savoir and Gibson breached their duties by "ignoring" conduct that

---

[6] Plaintiff argues that his breach of fiduciary duty claim is grounded on the additional fact that Defendants acted from self-interest when Nervive refused to honor Plaintiff's stock options. Tr. at 22:15–18 ("It cannot be that a board member can . . . make a decision . . . and the reason why they make that decision is for their own personal gain."). *But see Nemec*, 991 A.2d at 1129 (rejecting the argument that a breach of fiduciary duty claim was "grounded on an additional and distinct fact—namely, that the Directors were the persons responsible for the Company's decision . . . and stood to gain personally from that decision[,]" because "the fiduciary duty claim still arises from a dispute relating to the exercise of a *contractual* right" (emphasis in original)).

occurred before they joined the Board, including improper changes to the Company's balance sheet, the improper issuance of stock options to Harrington, and Plaintiff's removal from the Board).[7]

The parties struggle with how best to characterize this theory. So does the Court. While aspects of the Second Amended Complaint seem to sound in wrongful demand refusal,[8] Plaintiff does not contend that he made a demand on the Board. Defendants, for their part, treat the claim as a failure of oversight under *Caremark*, but acknowledge that framework does not fit either, as the Second Amended Complaint does not allege a failure to monitor and/or respond to "red flags" that arose while Savoir and Gibson served on the Board.

However his theory is characterized, Plaintiff's allegation that Savoir and Gibson breached their fiduciary duties by failing to "investigate" and "redress" the

---

[7] At oral argument, Plaintiff's counsel clarified that Defendants' decision to "ratify" Sacristan's conduct supports his aiding and abetting claim. *See* Tr. at 23:7–15 ("So that ratification issue really does go—that is kind of the shift in our allegations from the direct fiduciary duty claim to the aiding and abetting[.]"). To the extent the "ratification" itself is alleged to constitute a breach of fiduciary duty, the effect of the ratification is to confirm that Sacristan's actions were taken on behalf of the corporation, which could, perhaps, result in a risk of liability for the corporation. Any harm from that act would accrue to the corporation, as would any remedy. Because Plaintiff did not make a demand or plead that demand would be futile, any derivative claim challenging the "ratification" must be dismissed.

[8] *See, e.g.*, Compl. ¶ 58 ("[Plaintiff] put Gibson and Savoir on notice so that they could exercise their power as Board members in accordance with their fiduciary duties and redress Sacristan's wrongdoing.").

past conduct of other fiduciaries fails to state a claim. Nervive's certificate of incorporation includes an exculpation provision pursuant to 8 *Del. C.* § 102(b)(7) that protects Defendants "from liability for violations of their duty of care." *Morrison v. Berry*, 2019 WL 7369431, at \*12 (Del. Ch. Dec. 31, 2019); *see* DOB, Ex. 2. "To state a claim, then, the Plaintiff must plead a breach of loyalty"—*i.e.*, that Defendants were interested, lacked independence, or acted in bad faith. *Morrison*, 2019 WL 7369431, at \*13.

The Second Amended Complaint does not adequately allege Savoir and Gibson operated under a disabling conflict of interest such that they could not bring their business judgment to bear when determining whether to investigate and remedy past corporate conduct. It alleges that when Savoir and Gibson joined the Board, they declined stock options, so Sacristan promised them "the opportunity to obtain stock options" after "the litigation resolved in Sacristan's favor." Compl. ¶ 35. That alleged possibility of an uncertain financial benefit at some point in the future does not support a reasonable inference that Savoir and Gibson operated under a disabling conflict of interest. Nor does Plaintiff "make any factual allegations to support a reasonable inference that" an opportunity to receive Nervive stock options, even if such opportunity were not entirely speculative, would be material to Savoir or

17

Gibson.[9] *City of Miami Gen. Emps. v. Comstock*, 2016 WL 4464156, at \*18–19 (Del. Ch. Aug. 24, 2016) ("[W]hen a party challenges a director's action based on a claim of the director's debilitating pecuniary self-interest, that party must allege that the director's interest is material to that director." (quoting *Solomon v. Armstrong*, 747 A.2d 1098, 1118 (Del. Ch. 1999))); *see also, e.g.*, *In re Gen. Motors Class H S'holders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999) (explaining that a plaintiff must plead that the financial interest "was of a sufficiently material importance, in the context of the director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties to the . . . shareholders without being influenced by her overriding personal interest").

Nor does the Second Amended Complaint adequately allege that Savoir and Gibson acted (or decided not to act) in bad faith. "A failure to act in good faith may be shown . . . where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006) (quoting

---

[9] Similarly, the Second Amended Complaint alleges that when Gibson joined the Board, Sacristan promised that Nervive would recognize debt that Gibson believed was owed to him, but it does not allege facts to support an inference that such debt was material to Gibson, or that Nervive did not, in fact, owe Gibson that debt. Compl. ¶¶ 34, 37.

*In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 755 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006)). "[T]o state a bad-faith claim, a plaintiff must show either 'an "extreme set of facts"' to establish that '"disinterested directors were intentionally disregarding their duties,"' or that 'the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.'" *In re Chelsea Therapeutics Int'l Ltd. S'holders Litig.*, 2016 WL 3044721, at *7 (Del. Ch. May 20, 2016) (quoting *Dent v. Ramtron Int'l Corp.*, 2014 WL 2931180, at *6–7 (Del. Ch. June 30, 2014)).

Plaintiff's primary argument that Savoir and Gibson's inaction amounted to bad faith rests on the allegation that the Board received the Memorandum advising that Plaintiff had legitimate claims to stock options, but nevertheless failed to cause the Company to honor its contractual obligations. *See* PAB at 13–15. As explained above, however, such claim is governed by contract. *See supra* pp. 13–15. The only other allegation in the Second Amended Complaint that conceivably could support bad faith is that Gibson felt "personal animus" toward Plaintiff. Compl. ¶ 38. But that rote allegation on its own does not rise to the level of "extreme" facts needed to support a reasonable inference that these fiduciaries intentionally disregarded their duties in bad faith. As a result, the Second Amended Complaint fails to state a claim for breach of fiduciary duty.

\*          \*          \*

19

For the reasons explained above, Count I is dismissed in its entirety.

## B. Count II Is Dismissed.

Count II of the Second Amended Complaint alleges that Savoir and Gibson "are liable for aiding and abetting the breaches of fiduciary duties owed to [Plaintiff], and the fraud and conspiracy committed against [Plaintiff], by Harrington and Sacristan." Compl. ¶ 105.

"The basic four-part test for proving an aiding and abetting claim is well-settled under Delaware law and was articulated by this Court in *Malpiede*." *In re Mindbody, Inc., S'holder Litig.*, 332 A.3d 349, 389 (Del. 2024). "The test requires '(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach.'" *Id.* (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001)).

Count II fails for three independent reasons. First, it is time-barred. *See supra* pp. 9–13.

Second, the Second Amended Complaint fails to allege facts supporting an inference that Savoir or Gibson participated (let alone *knowingly* participated) in any breach of fiduciary duty. "Delaware trial courts have held that participation in an aiding and abetting claim requires that the aider and abettor provide 'substantial assistance' to the primary violator." *In re Mindbody*, 332 A.3d at 392 (citation

20

modified). Whether a defendant provided "substantial assistance" depends in part on "[t]he amount, kind, and duration of assistance given, including how directly involved the secondary actor was in the primary actor's conduct[.]" *Id.* at 396 (quoting *In re Dole Food Co., Inc. S'holder Litig.*, 2015 WL 5052214, at *42 (Del. Ch. Aug. 27, 2015)). "This substantial assistance requirement can also be understood as requiring active participation rather than 'passive awareness.'" *Id.* at 393 (quoting *Buttonwood Tree Value P'rs, L.P. v. R. L. Polk & Co., Inc.*, 2017 WL 3172722, at *10 (Del. Ch. July 24, 2017)). The Second Amended Complaint alleges that Savoir and Gibson did not join the Board until after the purported wrongdoing occurred. While Plaintiff asserts that Savoir and Gibson later "ratified" Sacristan and Harrington's conduct,[10] he does not allege that Savoir and Gibson were directly involved or actively participated in the breaches when they occurred, such that they could have provided "substantial assistance."

Third, "officers and agents cannot aid and abet their principal or each other in the commission of a tort." *Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945, at *11 (Del. Super. June 6, 2012) (first citing *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del. Ch. 1984); and then citing *Allied Cap. Corp. v. GC-*

---

[10] *See* Compl. ¶ 110 ("Gibson and Savoir participated in Sacristan's breaches of fiduciary duties by ratifying all of Sacristan's actions as interim CEO and failing to investigate any of those decisions ratified despite credible claims of serious misconduct and were provided the Memorandum that [Plaintiff] was entitled to exercise his stock options.").

*Sun Hldgs., L.P.*, 910 A.2d 1020, 1038 n.41 (Del. Ch. 2006)).  Even if Savoir and Gibson allegedly participated in the underlying conduct once they joined the Board, they could not aid and abet breaches committed by their co-fiduciaries.

Accordingly, Count II fails to state a claim for aiding and abetting a breach of fiduciary duty and must be dismissed.

## III.  CONCLUSION

For the reasons explained above, the Motion to Dismiss is GRANTED and the Second Amended Complaint is DISMISSED.